# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 13, 2019

Lyle W. Cayce
Clerk

No. 18-30702

K & B LOUISIANA CORPORATION, doing business as Rite Aid,

> Plaintiff - Appellant

v.

CAFFERY-SALOOM RETAIL, L.L.C.;
SOUTHWEST PROPERTY MANAGEMENT, INCORPORATED;
AMERICAN NATIONAL INSURANCE COMPANY,

> Defendants - Appellees

Appeal from the Unites States District Court
for the Western District of Louisiana
USDC No. 6:16-CV-503

Before CLEMENT, OWEN and HO, Circuit Judges.

PER CURIAM:*

On January 23, 1995, K & B Louisiana Corporation executed a 20-year lease with Caffery Center, L.L.C. for commercial retail space inside the Caffery Center Shopping Center. A major point of the agreement was the continued operation of a Winn-Dixie grocery store at the location to act as an anchor tenant and attract business.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30702

The companies specified that Winn-Dixie's occupancy was "part of the consideration to induce [K & B] to lease and pay rent for its store." Accordingly, the lease stipulated:

> Article 2 – Conditions Precedent and Continuing
>
> [S]hould Winn-Dixie fail or cease to operate or lease and pay rent for its store in the Shopping Center during the Lease Term as hereinafter set out, Lessee shall have the right and privilege of: (a) cancelling [sic] this Lease and of terminating all of its obligations hereunder at any time thereafter upon written notice by Lessee to Lessor, and such cancellation and termination shall be effective ninety (90) days after the mailing of such written notice; or (b) *invoking the privileges of Article 20 herein.* (Emphasis added).

The lease further instructed that should Winn-Dixie cease its operations and/or lease, Caffery Center had six months to find a replacement prior to K & B "*invoking its rights and privileges as above.*" (Emphasis added). However, should Caffery Center's efforts fail, the lease permitted K & B to pay half the rental amount until the breach was cured. Specifically, the lease stated:

> Article 20 – Default
>
> Without in any way waiving, limiting, or restricting Lessee's other remedies or options contained in this Lease, in the event of a violation of or the failure to Lessor or anyone else to observe the terms hereof, the monthly basic rental . . . *shall be payable at half of the stipulated amounts* therein stated for the period from the date of such default until Lessor cures any such violation or failure to observe the said provisions, which reduction shall be considered as liquidated damages for the periods during which any such violation may have existed. (Emphasis added).

The parties dispute whether these provisions required K & B to affirmatively invoke its options under Article 20, or whether the half-rent provision was triggered automatically six months after the breach occurred.

2

No. 18-30702

Sometime between June 21, 2000, and February 28, 2005, Winn-Dixie vacated its store-front and stopped paying rent. Although a comparable grocery store never took its place, K & B continued to pay the full rental rate throughout the lease term.

K & B did not act on its privileges and rights until December 17, 2015, when it sent a letter, through counsel, to the property manager, Southwest Property Management, Inc, declaring it and the parties to the lease in default. The letter stated that K & B was invoking its Article 20 remedies and demanded "the return of half of the total rental it paid during this period as liquidated damages."

On March 9, 2016, K & B filed suit in state court. The petition named Southwest Property Management, Inc. as a defendant, along with American National Insurance Company and Caffery-Saloom Retail, L.L.C. Defendants removed the case to federal court by means of diversity jurisdiction. Then, after a period of discovery, they filed two separate motions for summary judgment. The motions argued that K & B waived its right to overpayment and that its attempts to recoup its losses exceeded the ten-year prescriptive period.

K & B opposed the motions and filed one of its own. It contended that the half-rent provision in Article 20 took effect automatically and that the company thus possessed a claim under Art. 2299 of the Louisiana Civil Code, because Defendants had "received a payment or a thing not owed" and were bound to restore it. LA. CIV. CODE Art. 2299. K & B further contended that each installment had its own ten-year prescriptive period, meaning that the company could still recover most of the money it had mistakenly surrendered.

The district court granted summary judgment in favor of Defendants. It held that the plain language of Articles 2 and 20 demanded that K & B specifically invoke its rights before the company could benefit from the reduced

3

rent.  Since K & B failed to do so before the ten-year prescriptive period ran out, the company could not claim relief under Art. 2299.  The district court never reached a decision on the alternative issues raised by the moving parties. K & B submitted its notice of appeal.

A grant of summary judgment falls under *de novo* review.  *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 895 (5th Cir. 2013) (per curiam).  We apply the same standard as the district court and view the evidence in the light most favorable to the non-moving party.  *Id.*  Because our jurisdiction is based on diversity of citizenship, the substantive law of Louisiana governs our analysis. *Nat'l Liability & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 834 (5th Cir. 2014).

The controversy before us presents a single dispositive question: whether the terms of the lease required K & B to specifically invoke its privileges in Article 20 for the one-half provision to take effect?

We agree with the district court.  Article 20 must be read in light of Article 2.  Article 2 provides two options in the event that Winn-Dixie ceases to operate at the Shopping Center—K & B can either terminate its lease, or "invok[e]" the privileges of Article 20.  In light of this language, we construe Article 20, in the context of Article 2, to require an affirmative election by K & B to invoke its privileges under Article 20.  K & B has made no such election.  Accordingly, K & B has no statutory claim under either the lease or Art. 2299.[1]  We therefore affirm the judgment of the district court.

---

[1] The parties did not brief whether K & B was entitled to half rental payments for the months after it invoked its Article 20 option. We therefore do not address it here.